**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Abe JONES, Defendant-Appellant.**

**No. 74–3003.**

United States Court of Appeals,
Ninth Circuit.

June 6, 1975.

Frank T. Vecchione, Federal Defender of San Diego, San Diego, Cal., for defendant-appellant.

William A. Bower, Asst. U. S. Atty., San Diego, Cal., for plaintiff-appellee.

OPINION

Before TRASK and WALLACE, Circuit Judges, and PECKHAM,* District Judge.

PECKHAM, District Judge:

Upon stipulated facts, appellant was found guilty by the court sitting without a jury of conspiracy to import and im-

* Honorable Robert F. Peckham, United States District Judge for the Northern District of California, sitting by designation.

portation of 19 grams of heroin, in violation of 21 U.S.C. §§ 952, 960 and 963.

Appellant contends, first, that the heroin upon which his conviction was based was found by means of an unlawful vaginal search of his female companion, and second, that the evidence was insufficient for the court to conclude beyond a reasonable doubt that defendant had knowledge of the presence of the heroin or control over the heroin secreted in the vagina of the passenger in his automobile.

■ We need not reach the merits of the search, since it is settled law in this circuit that a person in appellant's position lacks standing to object to the body search of his co-defendant. Appellant lacks *actual* standing because the search did not intrude upon his privacy. Furthermore, so called " 'automatic' standing"[1] is not conferred upon appellant where, as here with the conspiracy to import and importation charges, possession at the time of the search is not an essential element of the crime charged. *United States v. Boston,* 510 F.2d 35, 38 (9th Cir. 1974); *United States v. Valencia,* 492 F.2d 1071, 1074 (9th Cir. 1974).

Appellant also maintains that his conviction for conspiring to import and importing heroin cannot stand because the evidence was insufficient as a matter of law for the court to conclude beyond a reasonable doubt that he had knowledge of the presence of heroin in the vagina of the passenger in his automobile or had any control over that heroin.

Appellant was driving an automobile with a Miss Turner as passenger across the border between the United States and Mexico. The automobile, Miss Turner and the appellant were searched. No narcotics were found in the automobile or on the person of appellant. After a protracted searching procedure, the heroin upon which defendant's conviction is predicated was found in a condom secreted in Miss Turner's vagina.

In passing on a challenge to the sufficiency of the evidence, this court must determine "whether the evidence, considered most favorably to the government, was such as to permit a rational conclusion by the [trier of fact] that the accused was guilty beyond a reasonable doubt." *United States v. Nelson,* 419 F.2d 1237, 1242 (9th Cir. 1969). This court has the benefit of a considerable body of Ninth Circuit authority to assist in applying this standard to the present factual situation. Many cases have considered the question of the amount of evidence necessary to link contraband found in an automobile with a defendant who did not possess the contraband but was the driver of or a passenger in the automobile at the time of seizure. While each factual situation differs, a pattern emerges from examination of the cases, which are exhaustively reviewed in *United States v. Martinez,* 514 F.2d 334 (9th Cir. 1975).

In *Arellanes v. United States,* 302 F.2d 603 (9th Cir. 1962), in the course of reviewing the sufficiency of the evidence to sustain a conviction for importing narcotics, the court set out the analytical framework:

> In its prosecution of this case, the government relied exclusively upon the statutory inference of knowledge of illegal importation which the jury is permitted to draw whenever it is shown that a defendant has or has had possession of narcotic drugs, and does not explain that possession to the satisfaction of the jury.

> This court has on many occasions passed upon the meaning of the word "possession" . . . The meaning as defined in the cases is a "dominion and control . . . so as to give power of disposal" of the drug. . . Proof of exclusive control or dominion over property on which contraband narcotics are found is a strong circumstance tending to prove knowledge of the presence of such narcotics and control thereof. . . . On the other hand, mere proximity to the drug, mere presence on the property where

1. *Brown v. United States,* 411 U.S. 223, 229, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973).

it is located, or mere association, without more, with the person who does control the drug or the property on which it is found, is insufficient to support a finding of possession.[2]

*Murray v. United States,* 403 F.2d 694 (9th Cir. 1968) involved a fact situation quite similar to the present one. Johnnie and Lonnie Murray were brothers both convicted of smuggling and concealing heroin. The brothers went to Tijuana together, returning to the port of entry at 8:00 p. m. the same day. Lonnie was driving the car. They both indicated to the border inspector that they were citizens of the United States and that they had purchased nothing in Mexico. Both were searched. No contraband was found on Lonnie, the driver. On Johnnie, the inspector found two rubber contraceptives containing heroin tied with a string around the biceps of his left arm. Both men were arrested and subsequently convicted.

On appeal, the conviction of Johnnie was affirmed; the conviction of Lonnie was reversed for insufficiency of the evidence. The court noted that the government had to prove that Lonnie received or concealed, or facilitated Johnnie's transportation or concealment of the heroin, that the heroin had been imported contrary to law, and that Lonnie had knowledge of the illegal importation. Lonnie was not in actual possession of the contraband. In reviewing the law, the court noted that he would have been in constructive possession of the heroin if he had personally shared custody of it or had such dominion and control over the drug as to give him the power of disposition. Johnnie's acts could also be imputed to Lonnie if Johnnie was Lonnie's agent, subject to his control.

The court concluded, however, that the evidence was inadequate to prove Lonnie's constructive possession of the heroin. The court reached this result despite the facts that Johnnie and Lonnie were brothers who maintained a close relationship with each other, that the trip was Lonnie's idea and he paid for the flight from San Francisco to Los Angeles, that Lonnie drove the borrowed car, and that Lonnie may have had a stronger personality than Johnnie. These facts were not sufficient to raise an inference that Johnnie was subject to Lonnie's direction and control, or that they were joint venturers engaged in narcotic activity, or that Lonnie could control the disposition of the heroin concealed on Johnnie's person. The court concluded that the evidence "may give rise to a suspicion that Lonnie was implicated with Johnnie in the importation and concealment of the heroin, but a suspicion, however strong, is not proof." 403 F.2d at 696.

*Murray* was regarded as controlling and followed in the short *per curiam* opinion of *United States v. Flom,* 464 F.2d 554 (9th Cir. 1972), wherein Flom's conviction of importation and knowing facilitation of the importation of heroin was reversed for insufficiency of the evidence.

The Government proved that Flom and his longtime friend Daniel Atkinson went to Mexico together. While separated from Flom, Atkinson purchased heroin and secreted it in his body. The men reentered the United States on foot, and were detained because they were nervous and appeared to be under the influence of drugs. Flom had recent needle marks on his arms, but a strip search was negative. A strip and body search of Atkinson revealed the heroin.

Viewed most favorably to the Government, the evidence does not support a finding that Flom had possession, actual or constructive, of the heroin, or that he knew it was illegally imported. Atkinson had exclusive control of the heroin. The Government's evidence may have given rise to the suspicion, but it did not prove that Flom was implicated with Atkinson in the illegal importation of heroin.

---

2. *Arellanes v. United States, supra,* 302 F.2d at 606, citations and footnotes omitted.

Murray v. United States, 403 F.2d 694, 695–96 (9th Cir. 1968).[3]

In *United States v. Gardner,* 475 F.2d 1273 (9th Cir. 1973), codefendants Gardner and Le Boulanger had been charged in a four-count indictment with conspiring to import, importing, conspiring to possess with the intention of distributing, and possessing with the intention of distributing nine ounces of heroin. Appellant Le Boulanger was found guilty on all counts. Appellant Gardner was found not guilty on all counts of the indictment; however, the jury found him guilty of the lesser included offense of simple possession of a controlled substance. Gardner appealed on the grounds of insufficiency of the evidence.

The evidence indicated that appellants entered the San Ysidro, California port of entry in a 1971 Buick owned by Le Boulanger, but driven by Gardner. While walking to the secondary inspection area, the border official observed Le Boulanger furtively release certain objects from his person which were later determined to be nine ounces of heroin. A subsequent personal search of Le Boulanger revealed an instrument kit for hypodermic injections and $138.00. A search of Gardner revealed $5.00, two traffic citations, and some miscellaneous papers, on one of which was written Le Boulanger's phone number at his residence in Placerville, California. Testimony further indicated that Gardner had performed various menial duties for Le Boulanger at the latter's place of business in Fremont, California. Part of his duties included the driving of the 1971 Buick. Gardner had been employed since March 1971, and had seen Le Boulanger under the influence of what he assumed to be narcotics. He had never questioned him about his use of narcotics because of his status as an employee of Le Boulanger.

Viewing the evidence most favorably to the government, the court concluded that it was insufficient to permit a rational conclusion that Gardner was guilty of simple possession of the heroin beyond a reasonable doubt. In rejecting the government's joint venture theory, the court relied on *Murray, supra,* indicating that Gardner's case for reversal was even more compelling than that of Lonnie Murray.

■■■ The facts of the present case similarly require reversal because the evidence is insufficient to prove beyond a reasonable doubt that appellant was involved in any conspiracy to import heroin. Defendant's eyes were pinpointed, his speech slurred, and he had needle marks on his arms. The evidence indicated that appellant and Miss Turner went to Mexico together to shop, returned together with appellant driving his father's automobile, and that both had needle marks and appeared to be under the influence of drugs. There is no direct evidence indicating that appellant knew that Miss Turner had secreted heroin in her vagina with the intention of importing it into the United States. Appellant may have invited Miss Turner to join him for a day in Mexico to purchase and inject heroin there, with a specific warning to her not to bring any heroin back to the United States. The evidence introduced is equally supportive of a conclusion that Miss Turner acted on her own, without appellant's knowledge, in purchasing, secreting, and attempting to import the heroin.

The government argues that the evidence is sufficient to sustain appellant's conviction as the driver of a vehicle containing contraband. The cases cited by the government are distinguishable.

The Ninth Circuit has sustained convictions against challenges to the sufficiency of the evidence in numerous cases, including *Rodriguez-Gonzalez v. United States,* 378 F.2d 256 (9th Cir. 1967) (conviction of driver and sole occupant of vehicle which contained marijuana secreted in the door panels); *Gaylor v. United States,* 426 F.2d 233 (9th Cir. 1970) (conviction of driver and sole occupant of vehicle which contained cocaine

---

**3.** *United States v. Flom, supra,* 464 F.2d at 555.

hidden above the radio); *United States v. Ramos,* 476 F.2d 624 (9th Cir. 1973) (conviction of both driver and passenger of automobile which contained forty-nine kilos of marijuana in trunk; appellant passenger linked to trunk key); *United States v. Fallang,* 439 F.2d 685 (9th Cir. 1971) (conviction of passenger who had paid for the rental of an automobile in the locked trunk of which was found a suitcase containing approximately 80 pounds of marijuana).

This court need not question the holdings of this line of cases where the inference has been permitted that drivers of vehicles have knowledge of the presence of contraband in the trunk, glove compartment, door panel, or instrument panel of the vehicles they have been driving. These cases proceed on the assumption "that a driver exercises dominion and control over his vehicle and its contents, from which dominion and control 'knowing possession' of the contraband that it contains may be inferred." *United States v. Martinez, supra,* 514 F.2d 334, 338 (9th Cir. 1975). The *Martinez* opinion categorizes the driver cases into four factual patterns. 514 F.2d at 338, notes 1–4. Neither need this court question those cases, like *Ramos* and *Fallang, supra,* which upheld convictions of passengers where a specific item of evidence indicated their control or custody over the vehicle or the portion of it in which the contraband was hidden. The discussion above concludes, also, that there has not been sufficient evidence of a joint venture to permit an inference of knowledge on the part of appellant. See *Martinez, supra,* 514 F.2d at 340–41, distinguishing *United States v. Campbell,* 507 F.2d 955 (9th Cir. 1974) and *Eason v. United States,* 281 F.2d 818 (9th Cir. 1960).

In the present case, appellant cannot be charged by this court with knowledge of what is secreted in his passenger's vagina as he might be charged with constructive possession of contraband hidden in the glove compartment of his car. Most closely on point are the cases of *Murray, Flom* and *Gardner,* discussed *su-*

*pra,* reversing the conviction of defendants where there was insufficient evidence to link them to the contraband secreted somewhere on the body of their codefendants.

The trial court found appellant not guilty of conspiring to possess heroin under count three and not guilty of possession of heroin with the intent to distribute under count four of the indictment. This court is of the opinion that the same reasonable doubt which led the trial court to find defendant not guilty of counts three and four requires that defendant also be found not guilty of counts one and two. Under the controlling Ninth Circuit authority, the evidence is insufficient as a matter of law to establish beyond a reasonable doubt that appellant had knowledge of the presence of heroin in the vagina of Miss Turner or had any control over that heroin.

Accordingly, appellant's conviction on counts one and two is reversed.